UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM GHADIRI,<br><br>    Plaintiff,<br><br>    v.<br><br>O'REILLY AUTO PARTS, et al.,<br><br>    Defendants. | Case No. 20-cv-01796-RS<br><br>**ORDER GRANTING MOTION TO DISMISS** |

## I. INTRODUCTION

Plaintiff Adam Ghadiri suffers from various spinal disorders, requiring him to use parking spaces accessible to and reserved for disabled persons. Sometime around March 2019, while in the parking lot of defendant O'Reilly Auto Parts ("O'Reilly"), Ghadiri allegedly discovered that one such space had fallen into disrepair. Twelve months later, invoking the Americans with Disabilities Act ("ADA") and related California law, Ghadiri brought suit for injunctive and monetary relief, prompting O'Reilly to restore its accessible space to what all parties agree is a presently acceptable condition. O'Reilly now moves to dismiss, arguing this restoration has rendered the controversy moot. Relying on the "voluntary cessation" exception to mootness, Ghadiri counters that the contested space may relapse into ADA-noncompliance, and urges the maintenance of supplemental federal jurisdiction over his state law claims in any event. For the reasons set forth herein, the motion is granted, and Ghadiri's complaint is dismissed. Pursuant to Civil Local Rule 7-1(b), this matter is appropriate for disposition without oral argument.

## II. BACKGROUND[1]

The factual background of this case is thin. From the face of the complaint, one gathers that Ghadiri is a California resident[2] suffering from spinal stenosis, myelopathy, and arthritis; that these conditions compel Ghadiri to park in accessible spaces; that around March 2019, while in O'Reilly's San Leandro parking lot, Ghadiri encountered an accessible space marked with faded paint, unattended by accessibility signage, and occupied by an unauthorized vehicle; that the state of this space frustrated his attempt to transact in O'Reilly's establishment; and that, at the time this suit was brought one year later, Ghadiri would have liked to return to O'Reilly's establishment but was deterred by the aforementioned barriers.[3] Although the complaint describes O'Reilly as "a restaurant," defendant trades in automobile parts. *See* Complaint, ECF No. 1, at 2.

O'Reilly has since addressed all relevant accessibility obstacles, expending $1,800 to re-paint the space, furnish it with signage, and mount notices—at both lot entrances—indicating the space's exclusive availability to those with accessibility needs. *See* Mot. to Dismiss, ECF No. 13, Exhibit 1. There is thus no meaningful dispute as to the parking lot's current ADA compliance. Pertinently, nothing in the record suggests O'Reilly has any prior history of ADA violations.

## III. LEGAL STANDARDS

### A. Subject-Matter Jurisdiction

Federal courts are creatures of limited jurisdiction; they only have power to hear disputes when authorized by Article III and by Congress pursuant thereto. *Bender v. Williamsport Area*

---

[1] These facts derive from the complaint as well as the extrinsic evidence permitted on a factual Rule 12(b)(1) motion. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[2] Ghadiri's town of residence is not disclosed.

[3] Because the parties principally train their attention on mootness, this order addresses itself to that issue. Even so, it bears note that Ghadiri barely makes the showing necessary to secure Article III standing. Under controlling Ninth Circuit precedent, "an ADA plaintiff can establish standing to sue for injunctive relief either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a non-compliant facility." *Chapman v. Pier 1 Imports,* 631 F.3d 939, 944 (9th Cir. 2011). But for a single assertion that Ghadiri was, as of March 2020, so deterred, it is doubtful his claims could be entertained in a federal court.

*Sch. Dist.*, 475 U.S. 534, 541 (1986). When a federal court lacks jurisdiction, it *must* dismiss the case. *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 687 (9th Cir. 2003). Motions to dismiss for want of subject-matter jurisdiction are governed by Rule 12(b)(1). Such motions may be brought at any time. Fed. R. Civ. P. 12(h)(3). They can be facial, challenging the court's jurisdiction on the face of the complaint, or factual, presenting extrinsic evidence that demonstrates an absence of jurisdiction on the facts of the case. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Courts may review evidence beyond the complaint, without converting the motion into one for summary judgment, in resolving a factual attack on jurisdiction. *Id.* (internal citation omitted). The truthfulness of the plaintiff's allegations need not be presumed. *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject-matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (internal citation omitted).

Because mootness goes to a federal court's subject-matter jurisdiction, it is properly raised in a Rule 12(b)(1) motion. *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 79 (2013) (affirming a district court's dismissal for lack of subject-matter jurisdiction on mootness grounds). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2013) (internal citation and quotations omitted). "[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Id.* (internal citation omitted). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* A defendant claiming that their voluntary cessation moots a case "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services*

*(TOC), Inc.*, 528 U.S. 167, 190 (2000).

### B. Supplemental Jurisdiction

A federal court's exercise of supplemental jurisdiction is governed by 28 U.S.C § 1367. The district court may, in its discretion, decline to exercise supplemental jurisdiction over a state law claim where one or more of the following circumstances exist: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C § 1367(c). The Ninth Circuit has held that "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 635 F.3d 550, 561 (9th Cir. 2010) (internal quotation marks, citation, and alteration omitted).

### IV. DISCUSSION

#### A. 12(b)(1) Motion to Dismiss

As is appropriate in a 12(b)(1) factual challenge, O'Reilly makes the case for mootness by pointing to extrinsic evidence that the ADA violation underlying this action has been removed. Ghadiri does not disagree. Instead, drawing on the work of two other trial courts in this circuit, he insists that because O'Reilly allowed the violation to occur, and because O'Reilly's mere inaction may permit it reoccur, it is not "absolutely clear the allegedly wrongful behavior could not reasonably be expected" to happen again. *Laidlaw,* 528 U.S. at 190. A fair reading, however, of the decisions upon which Ghadiri relies— *Lozano v. C.A. Martinez Family Ltd. Partnership* and *Love v. Petaishiski—*proves his dependence misplaced. 129 F. Supp.3d 967, 969 (S.D. Cal Sept. 8, 2015); 2017 U.S. Dist. LEXIS 28452 (C.D. Cal. Mar. 8, 2017).

In *Lozano v. C.A. Martinez Family Ltd. Partnership*, a paraplegic man brought suit under the ADA against the proprietors of a local swap meet for allowing the paint to fade on, and

ORDER GRANTING MOT. TO DISMISS
CASE NO. 20-cv-01796-RS
4

unauthorized vehicles to park in, a cluster of accessible spaces.[4] 129 F. Supp.3d 967, 969 (S.D. Cal Sept. 8, 2015). Testing the proprietors' assertion of mootness in light of the spaces' refurbishment, the court identified two factors cutting in the plaintiff's favor. First, the court observed that the defendants were repeat offenders, and had only installed accessible spaces after a separate ADA lawsuit some years prior. *Id.* at 971. Second, the court found that because paint could fade by "mere inaction," the defendants' voluntary cessation of the offensive conduct was dissimilar to the sort of "structural alterations" other federal courts have found sufficiently permanent to moot a disabled person's prayer for injunctive relief. *Id*. Given both of these conditions—a history of noncompliance and the prospect of further offenses by omission—the trial judge determined the existence of a live case or controversy.  Yet, and as O'Reilly persuasively contends, that determination rested squarely atop the presence of *both* conditions. Distinguishing *Lozano* from a factually similar dispute, a court in this district found the matter moot where "unlike in *Lozano* . . . there is no evidence before the court of a history of lapses in compliance with the ADA." *Johnson v. Melehan*, 2017 WL 3605227 at *2 (N.D. Cal. Aug. 22, 2017).

So too in *Love v. Petaishiski,* the second case on which Ghadiri principally relies. 2017 U.S. Dist. LEXIS 28452. Canvassing lawsuits involving "inadequately painted accessible parking spaces," the *Love* court recognized a defendant's "history of ADA lawsuits and compliance followed by a return to noncompliance" as a crucial ingredient to the voluntary cessation doctrine's proper application. *Id.* at 14-15 ("because Defendants' situation is unlike that in *Lozano* . . . the Court finds 'it is absolutely clear that [Defendants'] allegedly wrongful behavior could not reasonably be expected to recur'"). In sum, while Ghadiri is correct that the repainting of an accessible parking space does not necessarily moot an ADA claim, he fails to present a single case where such a claim has survived 12(b)(1) scrutiny absent a record of defendant's past ADA

---

[4] Notably, the *Lozano* plaintiff lived less than a mile from the ADA-noncompliant facility, which he visited monthly and had patronized on over three hundred occasions. *Lozano*, 129 F. Supp.3d at 969. No similar facts are averred here.

infractions. O'Reilly's suggestion—that in this particular context, the voluntary cessation inquiry turns upon such a record —hits decidedly nearer the mark.

Nor is Ghadiri aided by the nature of O'Reilly's renovations. Unlike the *Lozano* defendants, O'Reilly has responded to this litigation with more than paint, installing signs on both the façade of its building and on freestanding poles at each entrance to its parking lot. Setting aside the question of past violations entirely, it would appear these actions are "akin to structural changes that courts generally deem permanent enough to assure that the violation will not recur." *Melehan*, 2017 WL 3605227 at *2. While one may reasonably expect paint to fade by dint of human neglect, a metal pole generally does not free itself from the concrete.

Taking this conclusion together with O'Reilly's status as a first-time ADA litigant, it is "absolutely clear" that the conduct at issue "could not reasonably be expected to recur." *Laidlaw,* 528 U.S. at 190. Ghadiri's ADA claim is accordingly dismissed. In deference to the reality that "under the ADA, private enforcement suits are the primary method of obtaining compliance"— and despite it being far from apparent how he might save his federal claim—Ghadiri is given leave to amend. *Chapman*, 631 F.3d at 946 (internal citations and quotation marks omitted).[5]

**B. Supplemental Jurisdiction**

Seeming to anticipate the above result,[6] Ghadiri expends considerable effort arguing for the retention of supplemental federal jurisdiction over his state law claims. This petition runs headlong into the well-settled principle that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

Certain factors, including "judicial economy, convenience, fairness, and comity," may, of

---

[5] While ultimately unavailing, Ghadiri's additional concerns as to O'Reilly's lack of specific accessibility business protocols do not fall on deaf ears. To the contrary, this order is issued with the hope that O'Reilly will, for both its own good and that of its patrons, seriously consider adopting policies aimed at keeping out of the federal courts.

[6] Indeed, Ghadiri's counsel has previously expressed an expectation that his client's federal claim would be held moot. *See* Mot. to Dismiss, ECF No. 13, Exhibit 3.

course, militate in favor of a federal court's retention of exclusively state law claims. *Sanford,* 635 F.3d at 561. None do so here. O'Reilly's depiction of this case as one in its earliest stages, in which neither the parties nor the interests of justice will be harmed by dismissal from federal court, is plainly true. Should a future attempt to revive his ADA claim prove unsuccessful, Ghadiri may anticipate the dismissal of any attendant claims sounding in California law.

## V. CONCLUSION

For the reasons set forth above, O'Reilly's motion to dismiss is granted, with leave to amend pursuant to this opinion. In the event Ghadiri elects to file an amended complaint, he must do so within 21 days of the issuance of this order.

**IT IS SO ORDERED**.

Dated: July 27, 2020

_____
RICHARD SEEBORG
United States District Judge